## CHARLES H. FREEMAN *et al. versus* JOHN A. M'GAW *et al.*

*It seems* that the mode of levying an execution must be determined by the nature of the debtor's title at the time of the levy, and not at the time of the attachment.

Thus, where land mortgaged is attached by a creditor of the mortgager, and the mortgage is subsequently in any manner extinguished as respects all persons, the execution must be levied by extent upon the land, and not as upon an equity of redemption.

Land under mortgage was attached by F, a creditor of the mortgager, and afterwards the mortgagee, upon receiving from W the amount due on the mortgage and with the consent of the mortgager, gave to W a quitclaim deed of the land in common form. It was *held*, that the deed of quitclaim did not operate as an extinguishment, but as *an assignment of the mortgage ;* and therefore, that F, who subsequently levied his execution upon the land, did not acquire thereby a *legal title* to the land.

But *it seems*, that the equity of redemption passed to F by virtue of such levy, and consequently that his remedy was by a bill in equity to redeem.

THIS was a writ of entry, in which the plaintiffs claimed the demanded premises as the heirs of John Freeman.

From an agreed statement of facts it appeared, that the premises were attached on July 16, 1826, by virtue of a writ in favor of John Freeman against Asa Raymond ; that judgment was recovered by Freeman ; and that the premises were levied on, under the execution, on April 26, 1828.

On the part of the defendants it appeared, that the premises were conveyed by Raymond, together with all the residue of his real estate, to William Handy, by a deed dated June 10, 1824, for the consideration of $700 ; that Handy, at the same time, gave a bond to Raymond, conditioned, that, on the payment of the consideration with interest, Handy would reconvey to Raymond ; that three years afterwards, Hercules Weston, to whom Raymond was indebted in a large amount, called with a son of Raymond, on Handy, and asked him to reconvey or release the premises on payment of the sum due him with interest ; that Handy assented, on condition that Weston should also secure a debt due from Asa Raymond to Ebenezer Nye ; that Weston thereupon paid the amount of the bond &c., which was an adequate consideration for the premises ; that Handy, in September, 1827, gave to Weston a quitclaim deed, purporting to be for the considera-

tion of one dollar, of the real estate conveyed to him by Raymond, and the bond was given up by Raymond to Handy; that soon after Raymond gave a warranty deed of such real estate to Weston; and that in June 1832, Weston conveyed the same to the defendants.

It was not denied, that the payment of the debt due to Nye, and the conveyance by Handy to Weston, were made with the knowledge and consent of Raymond.

If upon these facts, the Court should be of opinion that the plaintiffs were entitled to recover, the defendants were to be defaulted; if otherwise, the plaintiffs were to become nonsuit.

*Marston* and *Nye*, for the plaintiffs, cited *Forster* v. *Mellen*, 10 Mass. R. 421; *Wade* v. *Howard*, 11 Pick. 289.

*J.* and *S. Reed*, for the defendants, cited *Bartlet* v. *Harlow*, 12 Mass. R. 348; *Goodwin* v. *Richardson*, 11 Mass. R. 469; *Chickering* v. *Lovejoy*, 13 Mass. R. 51; *Harrison* v. *Phillips Academy*, 12 Mass. R. 456.

Oct. 22d.

The opinion of the Court was afterwards drawn up by

SHAW C. J. The facts in this case appear by the agreement of the parties, and the only question is that of the priority of the respective titles, under which the parties claim. Both derive their titles from Asa Raymond, who, it is conceded, was owner of the premises in 1824.

The plaintiffs, as heirs at law of John Freeman, deceased, claim under the levy of an execution by setting off the land by metes and bounds, by appraisement. This execution was in favor of the demandants' father, John Freeman, against Asa Raymond, and was levied on April 26, 1828, on a judgment in a suit, upon which the premises were attached on July 16, 1826.

A question was made at the bar, whether, if at the time the attachment was made, the interest of the debtor was an equity of redemption, and before the levy of execution the mortgage was redeemed or otherwise discharged, the levy was rightly made upon the premises by metes and bounds, as a legal estate; or whether it should have been as upon an equity of redemption, pursuant to the statute.

Though some doubts may have existed upon this subject

prior to the statute, yet it is probable, upon the construction of the general act, that this course of proceeding must have been pursued, when the mortgage was extinguished after the attachment and before the levy. The attachment merely fixes a *lien* on the premises, without transferring the title or affecting the nature of the estate. The mode of levy, the act by which title is to be transferred, it would seem, must be determined by the nature of the debtor's title, at the time of the levy, and not at the time of the attachment. In the case supposed, the title of the debtor is changed from an equity, to an absolute estate, without any act or assent of the attaching creditor. Besides, the equity of redemption is in fact gone, and it would seem to be absurd to pursue a mode solely applicable to a subsisting equitable estate, when such estate no longer exists, or to sell a right of redeeming an estate from a mortgage, which has been paid or discharged. The consequence would be, that the attachment must be deemed to be gone, by the extinguishment of the subject matter on which it was made ; or the attachment must be considered as affecting the interest of the debtor in the estate, whatever it may be, so that the lien will follow the estate, and attach to it, in which case a levy by metes and bounds- is the only mode of giving it effect. The statute being remedial, such construction ought to be given to it, as to advance the general purpose and intent of the law. And such seems to have been the course of decisions before the statute, though I am not aware that the point was ever precisely decided, upon argument. *Forster* v. *Mellen*, 10 Mass. R. 421 ; *Chickering* v. *Lovejoy*, 13 Mass. R. 51. But we consider the question settled by *St.* 1815, *c.* 137, § 3 ; for though the statute, in terms, extends only to a case where such mortgaged real estate shall be redeemed by the mortgager, after an attachment, and before levy, yet the equity of the statute would, I think, extend, so as to include all cases, where by the discharge and extinguishment of the mortgage in any mode, the equity of redemption is converted into a legal estate. This remark, however, ought to be considered with this qualification ; that in some complicated cases, which may be supposed, a mortgage may be deemed to be kept up, and not discharged

or extinguished, to some purposes, and in favor of some persons claiming rights under it, where to other purposes, and as against other persons, in furtherance of justice, it may be taken to be discharged and extinguished.

As this levy constitutes a good *primâ facie* title, it becomes necessary to compare these titles, and to ascertain which has the prior and better title.

The attachment under which the demandants claim, was made in July 1826, and in order to defeat the title under it the defendants must establish an earlier conveyance from Raymond. There is some confusion about the dates of the execution and acknowledgments of the deeds, which are referred to and copies of which are produced ; but it may have arisen from the burning of the records in this county and the second registration of deeds ; and as the parties have made no question on that subject, we take them as stated in the report.

It appears that prior to the attachment of Freeman, namely, in June 1824, Asa Raymond conveyed the premises by deed to William Handy, and at the same time the latter executed to Raymond a bond of defeasance, by which the deed, which was absolute in its terms, was in legal effect a mortgage. Thus stood the title when Freeman's attachment was made.

It further appears, that about three years afterwards and after the attachment, Weston, with the knowledge and consent of Raymond, applied to Handy to release or reconvey the premises on being paid the amount due him with interest. To this he consented, on a condition, which we consider immaterial. The result was, that Handy, by a deed of quitclaim, in common form, with covenants of warranty against him and his heirs, in consideration of one dollar paid, conveyed the premises to Weston.

The great question is, whether this deed of quitclaim, constituted a release and discharge of the mortgage, so as to let in the intervening attachment of Freeman, and give it a priority, or a transfer, conveyance and assignment of Handy's interest as mortgagee. And on this question we are of opinion, that this deed did not extinguish the mortgage, but

was a good and valid assignment of Handy's interest as mort
gagee.

Without resorting to the parol evidence, we think it mani
fest from the deed itself, that it was not the intent of the
parties, simply to release the mortgage, but to convey and
transfer the estate and interest created by the deed.   Perhaps
the parties, through mistake of the law, did not consider the
bond and deed together as having in all respects the legal
character of a mortgage, and might have supposed that giving
up the deed of defeasance, would, *ipso facto* and to all pur-
poses, change the estate of Handy into an absolute estate.
But this mistake of the law would make no difference ; and
laying that out of the case, we think it quite manifest, that
it was the intent of the parties, that Weston should acquire
and hold the estate and title which Handy till then held,
under Raymond's deed, and that was, the interest of a mort-
gagee.   Such being the intent, it is to be carried into effect,
if it can be done consistently with the rules of law ; and we
think it can.   The same point was under consideration in a
recent case, in the county of Worcester, and was so decided.
*Hunt* v. *Hunt*, 14 Pick. 374.   The Court there held sub-
stantially, that according to established rules of law, where
there is a manifest intent, to convey an estate by deed, but
where, owing to the want of some requisite, or the interven-
tion of some rule of law, it cannot operate in the manner
intended, it shall operate in some other manner to carry into
effect the intent of the parties, if it can.   So the common deed,
containing the words give, grant, bargain and sell, shall be taken
to be the common law conveyance of feoffment, and not a
bargain and sale, where a use is declared to a person other
than the bargainee, in order to give effect to such declaration
of the use ; whereas if it were construed a bargain and sale,
taking effect itself by operation of the statute of uses, any
further use declared thereon would be void, by the rules of
law.   *Thatcher* v. *Omans*, 3 Pick. 521.   So we think, in a
case like the present, where there is a manifest intent, that
an estate shall pass, where there is a pecuniary consideration,
where the conveyance is to the use of the bargainee, to
take effect immediately, and the deed is enrolled or registered,

although the deed is in form a quitclaim, the estate will pass by way of bargain and sale, and constitute a good assignment of a mortgage.

But without pursuing the reasoning or the authorities further, we are of opinion that the legal estate of Handy did pass to Weston by this deed, and the defendants have a good title by deed from Weston.

But the interest of the grantor, Handy, was that of a mortgagee, a defeasible estate, to be defeated upon payment of the amount due on the mortgage.

It is a well-established rule of law, that the interest of a mortgager may be levied and set off by appraisement, and if no deduction is made on account of the mortgage, that the interest of the mortgager, that is, the equity of redemption, will pass by such levy. Neither Handy nor Raymond could make any conveyance, the effect of which would be to deprive the attaching creditor of his right in equity to redeem. In determining therefore, that Weston took Handy's interest by this deed, and therefore had an elder and better *legal title* to the premises, we do not determine that Freeman did not acquire the equity of redemption under his levy, and that his heirs have not still a right to redeem upon payment or tender of the money due on the mortgage, if the right is not foreclosed, by entry and lapse of time, or otherwise. The opinion now given extends only to the question of legal title. The right of the plaintiffs, if they have any, must be in equity, on a bill to redeem.